Good morning. May it please the court. Henry Cruz for the petitioner, Mr. Pacheco. Mr. Pacheco has appealed the denial of his applications for withholding of removal and relief under the Convention Against Torture. Now, the immigration judge did find that Mr. Pacheco suffered past persecution by his father on account of a protected ground. However, the IJ also found that the government had submitted enough evidence to prove a change in circumstances sufficient to overcome the presumption of an eligibility for withholding of removal. Your client is now, what, 28 years old? He's 31, Your Honor. 31. 31. And the events at the hand of his father occurred when he was between 3 and 5? Correct, Your Honor. So to get to that point, Your Honor, one of the factors that the judge did rely on to find fundamental change in circumstances is the fact that my client is now an adult and not a child. But this court has repeatedly held that there must be a fundamental change in circumstances. And that means that the government does not meet their rebuttal presumption when there is a past persecution where the evidence indicates that the persecution is similar. There is still persecution similar to that experienced by the petitioner. And in this case, while the petitioner is no longer a child, there is evidence that the father still wants to harm. The father holds animosity, anger towards my client, and that he still wants to harm my client. How do we know, sir, that the immigration judge didn't consider those things? Well, by the mere fact that she didn't mention them in her analysis. She clearly states that there is no evidence that the father is interested in harming my client, but that's simply not the case. There are the letters in the record, specifically one from the uncle, who lives in the same town that the father is and who has had personal contact with the father recently, and whom the father has told, has threatened to the uncle that you need to tell me when Mr. Pacheco arrives. And the uncle clearly states that his life is at risk because of his father. He, the uncle, he, the uncle's life is at risk. The uncle, no, the uncle has stated in his letter that Mr. Pacheco's life is at risk. But didn't the immigration judge basically say when he went through the asylum officer interview with respect to 2006, he only said that his father didn't want him to return. He didn't talk about a threat or a risk at that time. Well, he did state that he was not directly threatened when he was deported back in 2006, but the message from the uncle clearly indicated to him that the father didn't want him around and that he was still at risk. Now, the letter itself, the uncle's letter that was written just six months before Mr. Pacheco's hearing, that states that his life is at risk because of his father. His father still wants to harm him. And why would the father, oh, sorry, Your Honor. Finish your thought. Why would the father threaten the uncle to tell him when Mr. Pacheco arrives? I mean, he's not wanting Mr. Pacheco to arrive to throw a surprise birthday party for him or something like that. Maybe it's a surprise, maybe an ambush, but this isn't something, there is definitely, the message from the uncle is definitely that his life is at risk because of his father and still is. And then there's a letter from the mother, too, who states that they have received threatening letters from the father and that they continue to receive these threats, threats to kill Mr. Pacheco directed from the father. Didn't your client live in Mexico with his mother in the same state where the father resides for about seven years? He did, Your Honor. However, the IJ overlooked several facts that made that possible. One was they weren't simply able to leave. They actually escaped when the father was called on duty for the military. While they were living with the father, the mother tried to report the abuse to the police several times, but the police ignored her requests for help. So they were only able to escape once the father was called on duty. And they weren't living out in the open. They were traveling in a circus. They worked for a circus. I mean, I know they moved around with the circus. Every two to three months. Right. But they were in the same state. Is there any evidence he couldn't relocate to a different state in Mexico? Well, the issue about relocation, Your Honor, is that the IJ didn't actually reach that issue. She didn't make her decision on the basis of relocation. She only made her decision on the basis of fundamental change in circumstances. Isn't that a fair inference? Well, I think the IJ's point, the fact that they were able to move around, ultimately was that the father no longer wanted to harm them. The father was no longer interested in looking for them. But, in fact, while they were traveling with the circus, Mr. Pacheco testified that the father was looking for them. The father was interested in knowing where they were. The father simply couldn't find them because they were well hidden in their transient lifestyle with the circus. Also, the father was still on active duty in the military. And then subsequent to that, the father went to prison. And, therefore, once he was in prison, they saw that it was safe for the children to return, and the mother took them back to their maternal grandfather while she went to the United States. So I think these are all concrete, clear facts in the record that the IJ's clearly overlooked to show that, ultimately, there has not been a fundamental change in circumstances. This Court has held that the mere fact that the applicant has been able to escape and hide from the persecutor doesn't undermine their fear of persecution, especially when, as in this case, the persecutor had been looking for them, but they were successfully able to hide in different and various places over just short periods of time. Is there a question of which issue we look at? Because if we look at whether substantial evidence supported the IJ's decision, which was essentially adopted by the BIA in large part, that's one thing. Or if we look to see whether there was an error because not everything was considered, that's kind of a different question. Which of those are you asking? Well, Your Honor, I think that the government's burden here was not met. I think the evidence compels that because the letters clearly indicate that there is still a risk of harm by the father. The other point is that Mr. Pacheco testified that he could not relocate. He would have to live in the same hometown that his father lives in. The immigration judge did not find that to be untrue or not credible. The IJ did not find that he could relocate. Therefore, we must assume that he would be living in the small town of Cocucho, a very small town as he described it, and the father could easily find him there. So we have the father still wanting to harm him. We have the father being able to find him in such a small area. And, of course, the father is now a member of Los Cetas, a very powerful and dangerous drug cartel with many connections, being able to corrupt police officials. It would not be hard for him at all to find Mr. Pacheco in that very small town. If I may reserve the rest of my time, thank you. You may.  May it please the Court. Yedid Yacon on behalf of the Respondent. This Court should deny the instant petition for review as substantial evidence supports the agency's determination that Mr. Pacheco failed to carry his burden in establishing eligibility for either withholding of removal or protection under the Convention Against Torture. Simply put, the record in this case falls far short of demonstrating, let alone compelling the conclusion that it's more likely than not that Mr. Pacheco will be persecuted or tortured if returned to Mexico. In support of his claim, Mr. Pacheco testified regarding a single unfortunate incident of physical abuse by his father at a very early age, as well as verbal abuse between the age of three to five, at which time his mother took him to pursue a job in a traveling circus. He also described discrimination and harassment he suffered on account of his Tarasco ethnicity and one incident of theft but no physical assault or abuse as a result of his Tarasco ethnicity. Although the immigration judge in the board agreed that he suffered past persecution by his father on account of membership in a particular social group composed of children lacking effective familial protection, substantial evidence supports the agency's further determination that there has been a fundamental change in circumstances rebutting the presumption that Mr. Pacheco will be persecuted in Mexico on the basis of the original claim. Did the government at the IJ hearing challenge any of the evidence that counsel for Mr. Pacheco has described to us in his opening argument, such as the father still looking for him, the father's now a member of ZTEAS, those kinds of things? Did the government try to rebut any of that? No, the hearing was quite short, but the record evidence in this case included a testimony by Mr. Pacheco before the asylum officer indicating that when he returned to Mexico, he had heard that his father did not want him to return, but not that his father was threatening him. And the immigration judge weighed this evidence accordingly, concluding that because there was this disparity between the testimony before the asylum officer and the testimony in immigration court, she was going to give more limited weight to the testimony in immigration court because of that disparity. Yes, the asylum testimony is not necessarily inconsistent with the IJ hearing testimony that the father's still looking for him, correct? One could take that approach, but even if we use the most generous interpretation of both the testimony and the letters in the record, we provide all benefits of the doubt to the petitioner. The record in this case simply still does not compel the conclusion that it's more likely than not. For withholding of removal and protection under the Convention Against Torture. Doesn't it boil down to the 2006 letter in large part? So I'd like you to address that. The 2006? Well, the letter that the threat was still out there from the uncle's letter. The uncle's letter. The uncle's letter, I'm just turning to that page in the record, indicates the father is now part of a gang, and it says, his father has also made a threat to us that if we don't let him know of his return, indicating perhaps that his father wanted to make sure that he would find out if Mr. Pacheco returned. But again, in this case, even if we reach the conclusion that the probability of persecution by the father is great, as indicated by the immigration judge, there's one and only one reason for the father to want to persecute Mr. Pacheco. And that's the reason that Mr. Pacheco provided time and time again in his asylum application, in his interview for reasonable fear and before the immigration court. He indicated that his mother had told his father that she was having an affair, and this caused his father to believe that Mr. Pacheco was not the biological son of his father or the individual who his mother was living with. And on this basis, he says, the abuse began. So the immigration judge concluded that any probability of future persecution was on account of this personal vendetta. Well, blood and feuds run deep, so I'm not sure why the passage of time would actually change his view about this son who he doesn't believe is actually his son by blood birth. Even if we assume that the probability of persecution is high, as I indicated, he still has to demonstrate for withholding of removal that it's more likely than not that he'll be persecuted on account of a protected ground. And the protected ground that was found to be the basis for the past persecution, children lacking effective familial protection, no longer applies, as explained by the agency, because Mr. Pacheco is no longer a child. Therefore, he's no longer a child lacking effective familial protection. Here he is now in his 30s or late 20s at the time of the hearing, and therefore does not qualify anymore for membership in that social group. Now, substantial evidence also supports the agency's determination that Mr. Pacheco will not be persecuted or that there's not a clear probability of persecution on account of his Tarasco ethnicity. Mr. Pacheco doesn't challenge the agency's determination that he didn't suffer past persecution on this ground. Instead, he points to the State Department country reports indicating that there's a pattern or practice of persecution of individuals similarly situated. But those reports, as indicated by the agency, even if they demonstrate marginalization or discrimination, don't demonstrate a pattern or practice of persecution. Again, to establish eligibility for withholding, he has to have that nexus to a protected ground. And finally, substantial evidence also supports the agency's determination that he failed to demonstrate eligibility for protection under the Convention Against Torture. To be eligible for that form of protection, he would have to establish that it's more likely than not that a government official or other person acting in official capacity would torture him or would acquiesce in this torture by others. May I just ask you to go back slightly?  Yes. I understand your argument that he's no longer a member of the protected group because he's now well into his majority. But it didn't seem that that was a basis articulated by the BIA. It's a logical basis, but the BIA was taking it straight up. Here he was as a kid. Now some time has passed. But as I read the BIA, the BIA really didn't embrace the argument that you just made. Maybe I'm missing something, and you can point me to where in the decision I should look. That he fell outside of that class. I don't think the BIA mentions that. The Board adopted the decision of the immigration judge, and the immigration judge concluded that the DHS met its burden to show fundamental change in circumstances because the applicant, his mother, left his father when he was about five years old traveling with the circus. They were able to successfully escape abuse by the father, and he's now 28 years old. By indicating the change in age, you know. I mean, I understand that, but it seemed to me that's more of a passage of time argument as opposed to the more legal argument you make, which is he doesn't even qualify under one of the protected grounds. And as you well know, we're not supposed to go outside of the bounds of the decision. Of course. So if we view it as a passage of time matter, then it's the same conclusion,  whether we view that as him no longer falling within this class, or no longer eligible for the presumption that he'll be persecuted on the basis of the original claim. Because this is how the presumption works in the withholding context. The regulations provide that if you've suffered past persecution, you don't have an all-encompassing presumption of future persecution, meaning if you've been persecuted on account of your race, you don't have a presumption of persecution on account of your religion. Instead, you only have, please. Would it be your position that the passage of time alone is a sufficient change in circumstances? Yes, along with the other circumstances that have been mentioned by the immigration judge and adopted by the board. Regardless of how we interpret the language in that decision, this is a fundamental change in circumstances because he is now 28 years old at the time of the hearing, and so no longer a child. And whether we view this as a determination that he no longer falls within that exact class, or whether these changed circumstances merely provide that he's no longer going to be subject to the same type of persecution that he was subject to as a child, it really is a distinction without a difference in the sense that both support the conclusion of the immigration judge and the board that these changed circumstances really no longer allow him to be eligible for and benefit from the presumption that's provided in the regulations. Turning to Kat, do you think that the IJ gave sufficient consideration of the evidence? Yes. The immigration judge considered the record evidence and concluded that Mr. Pacheco simply failed to provide evidence that there was probability that he would be tortured if returned to Mexico by or with... Two sentences. One is the conclusion that you've just read to us, and the second is simply that he speculates his father still wants to harm him and that he will send members of the gang to torture him, but he presented no evidence substantiating that claim. Can you address that? Was that a rejection of the evidence that we have with the letter from the uncle? The immigration judge is explaining that the record evidence doesn't support the conclusion. She reviewed the evidence in the record, but concludes that that evidence is insufficient to substantiate this specific claim. It's not to say that he has presented no evidence in support of his argument, but simply no evidence to substantiate the claim. I mean, I read it to mean that she was basically saying that he hasn't presented any evidence about acquiescence or participation by the government, which would be required in the Kat claim, because... Well, he did present evidence. He didn't present any evidence on that. Is that how you read it? The sentence before indicates that he speculates his father wants to harm him and will send members of the gang to torture him. There's no evidence in the record that the father would send members of the gang to torture him. In fact, the evidence of gang membership is extremely thin. That's not the question that was asked. The question has to do with government... You need government acquiescence or participation to sustain a Kat claim. So I'm asking you, as I read it, the immigration judge and then the BIA are basically saying there's nothing here that links the government to this claim. Yes, that's absolutely right. That's what the immigration judge concluded. I'm sorry. It's always good not to fight with the question. Or the judge. Yes, absolutely. I would be in agreement with that. Now, if Your Honors have no further questions, we would submit on the briefs. All right. Thank you. Thank you very much. You have some rebuttal time. Thank you. So I'd just like to point out a couple of clarifications. One is the government has repeatedly provided as a standard more likely than not. But the initial issue here is whether there was a fundamental change in circumstances. If the government, as they stated, assumes that the probability of persecution is still great for Mr. Pacheco, then he wins, because that means that there has not been a fundamental change in circumstances. The father, the type of persecution that he suffered was extreme persecution by the father. The father's animosity towards him because he does not consider him his child. This is the same animosity that the father still holds, and he still wants to harm him. In fact, he wants to kill him. And that has been from letters issuing threats to kill. And he could certainly do that with Los Zetas in terms of being able to, in terms of the CAT claim for acquiescence. Respectfully, there is evidence that the Mexican government would acquiesce. And there are a couple of articles in the record specifically stating that local and state police officers help and directly work on behalf of drug cartels in their criminal activities. And these drug cartels include Los Zetas, which the father is a member of. And they specifically say that local police are the most vulnerable to be infiltrated by the drug cartels. And in a small, very small town like Cocucho, it's no stretch of the imagination that Mr. Pacheco's father could get with his connections of Los Zetas, corrupted officers to help him or turn a blind eye towards the torture. That's a long speculation and train of events to get to that conclusion, to meet the clear probability. I mean, most cases aren't going to have specific evidence that, and he doesn't need to prove specific evidence that a police officer would actually acquiesce in his own torture. What we need to show is that there's a likelihood of officers that would be corrupted, such as the evidence in the record indicates that they are easily corruptible, specifically local officers. And I would just say that it's a very high likelihood when we're talking about a very small town like Cocucho. And in terms of the protected ground issue, I would have to agree with the court that the court in its fundamental change of circumstances analysis did not rely on the fact that he was no longer, he would no longer be perceived on account of a protected ground. And the BIA, in fact, in a footnote, said that they would pass on that issue. And they did not actually address the issue of whether there was a protected ground. And so I don't think that that issue is before this court. If the court somehow feels that that is an issue remaining and needs to be addressed, well, then I think remand would be proper. But I just don't think that the judge in this case found that there wasn't a protected ground. And it doesn't need to be the same protected ground. It just needs to be one protected ground based on similar persecution. And the similar persecution here again is the father. Thank you. Thank you. The case of Pacheco Asensio v. Sessions is submitted. I thank both of you for your arguments this morning.
judges: Hawkins, McKeown, Foote